UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MELISSA RAMSDEN, R.N., § § § *Plaintiff,* § § vs. § § PORT ARANSAS INDEPENDENT § SCHOOL DISTRICT, § § *Defendant.* § | Civil Action No. 2:16-cv-00122 |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Melissa Ramsden, R.N., brings this action against the Port Aransas Independent School District, Defendant. In support of her claims, Plaintiff respectfully states:

### I.   LAWS RELATED TO SPECIAL EDUCATION

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq., is a federal law that, among other things, governs how states and public agencies provide special education and related services to children with disabilities. IDEA requires that public schools create an Individualized Education Program ("IEP") for each student who is found to be eligible under both the federal and state eligibility/disability standards. An IEP team, consisting of the child's educators, parents, service providers and potentially others, meets together for the purpose of examining and evaluating test results and related information, ("IEP Team"), and the IEP Team discusses if the child requires exceptional education support to be successful in general education. If so, the IEP Team develops, reviews and/or changes the eligible child's IEP. IDEA guarantees that each eligible child receives a Free Appropriate Public Education ("FAPE"), which is individualized to a specific child, designed to meet that child's unique needs, and from which the child receives educational benefit.

By law, schools are required to provide a FAPE in the least restrictive environment ("LRE") that is appropriate to the individual student's needs. LRE provides that a disabled student should have the opportunity to be educated with non-disabled peers, to the greatest extent appropriate. Patients-students with disabilities should have access to the general education curriculum, or any other program that non-disabled peers would be able to access. In addition, disabled patients should be provided with supplementary aids and services necessary to achieve educational goals if placed in a setting with non-disabled peers.

Children with disabilities who qualify for special education are protected by the Rehabilitation Act of 1973 ("Rehabilitation Act") and by the Americans with Disabilities Act ("ADA"). In addition, individuals who stand up for and advocate for the rights of disabled children including the right to receive a FAPE with needed aids and services are protected by the anti-retaliation provisions of the Rehabilitation Act, Section 504, 29 U.S.C. § 701, et seq. This case is presently being filed under the Rehabilitation Act. The United States Equal Employment Opportunity Commission has opened an investigation into retaliation against Plaintiff under ADA. This lawsuit is likely to be appropriately amended.

## II. TEXAS NURSE PRACTICE ACT

Texas law prohibits retaliation against a nurse who reports any situation that the nurse has reasonable cause to believe exposes a patient to substantial risk of harm as a result of a failure to provide patient care that conforms to minimum standards of acceptable and prevailing professional practice or to statutory, regulatory, or accreditation standards. This protection is articulated in the Texas Occupations Code at §§ 301.402(f) & 301.413. Suspension, termination, discipline, or any discrimination against a Texas nurse who makes a protected report is forbidden by law.

### III. PARTIES

1. Plaintiff Melissa Ramsden, R.N. ("Plaintiff" or "Nurse Ramsden") is an individual residing in Port Aransas, Texas. She is a Texas licensed Registered Nurse.

2. Port Aransas Independent School District ("PAISD") is a school district in Texas that receives federal financial assistance. It is a governmental entity with independent taxing authority.

3. Nurse Ramsden has a long history of contracts issued by PAISD.

### IV. JURISDICTION AND VENUE

4. This Court has personal jurisdiction over Defendant and has subject matter jurisdiction over this controversy based upon the federal statutory cause of action pled herein. This Court has pendent jurisdiction with regard to the state-law claim.

5. Venue is proper in the United States District Court for the Southern District of Texas, Corpus Christi Division because PAISD is located in the District and Division because the wrongful acts complained of against the Defendant occurred in the District and Division.

### V. FACTUAL BACKGROUND

6. Nurse Ramsden has always put the needs of her patients first and received positive feedback during her career at PAISD for many years until such time as she complained about unlawful activities involving disabled-special needs students occurring within the PAISD.

7. Nurse Ramsden has always worked hard to understand and comply with the various state and federal laws and regulations pertaining to the intricacies of special education, as well as her responsibilities as a licensed nurse, including her mandate to act as a patient advocate. She has at all pertinent times understood that PAISD does not have an obligation to provide disabled students an "ideal" or "perfect" education. In contrast, this lawsuit has as its background

deliberate neglect of the population of disabled students, those students who might be evaluated for disability and classified as such and those students who have been identified as eligible for benefits but are being denied the benefits to which they are entitled.

8. Plaintiff is a Registered Nurse who has been the School District Nurse in Port Aransas, Texas since 2000. Prior to school nursing, Plaintiff was a pediatric emergency room nurse [CEN], and before that, an Army medic [Plaintiff served in Desert Storm with the 47th Medical Support Battalion, 1st Armor Division]. Like many school nurses working in smaller school districts in Texas, Plaintiff alone historically covered all District campuses - elementary, middle & high school with a total current enrollment of approximately 535 students district-wide.

9. Plaintiff was in a long struggle in 2013 with the Port Aransas Independent School District where she is currently employed. The struggle began when the former Superintendent attempted to dictate to Plaintiff what she could and could not write in her nursing care plans and other documentation about students. The former Superintendent's reasoning was that if Plaintiff documented "too much" or the "wrong thing," the District might end up legally obligated to provide services to special needs-disabled students. The Superintendent wanted to minimize such expenditures.

10. Plaintiff refused to be directed about how to document care plans and nursing notes by both the Superintendent and one Principal in particular. Plaintiff was suspended, with the Superintendent claiming misconduct, which the Superintendent demonstrably knew was false at the time the claim was made. Plaintiff was also expelled from all campuses and athletic facilities including the ones where her children attended school or participated in athletics. After a long struggle that was quite political, with most of the public supporting Plaintiff (over 100 people showed up at a school board meeting on Plaintiff's behalf), the Superintendent was forced into early retirement. A new Superintendent, Mr. Wayne Johnson, was hired, and charged with aiding

the process of returning Plaintiff to work. That new Superintendent ostensibly made the care of special needs and disabled students his own platform and priority.

11.   Over several weeks and numerous meetings, the new Superintendent and Plaintiff and their counsel hammered out a Settlement Agreement in an effort to avoid litigation over the preceding struggle. The final Settlement Agreement included PAISD payment of Plaintiff's attorney's fees, and a promise that Plaintiff and PAISD would work together in the future to care for students. A mechanism to consult with the Texas Department of State Health Services, in case of disputes in the future, was also established.

12.   As the next school year got underway, Plaintiff was unpleasantly surprised when it was suggested to her by Superintendent Johnson that Plaintiff *not document* most of her nursing care. Plaintiff politely reminded the Superintendent about their previous discussions and the Settlement Agreement, signed by both of them. The next day, Superintendent Johnson somewhat backpedaled and told Plaintiff (reluctantly, with some frustration) to go ahead and document but do so "as little as possible" ("just one sentence" with other restrictions explained) and to keep the documentation handwritten only, never electronic. Superintendent Johnson directed Plaintiff to keep her documentation concealed from teachers, parents, other nurses or health care providers. Plaintiff concluded that following that directive would result in a violation of the Texas Public Information Act, a violation of the Texas Nurse Practice Act, as well as a violation of the rights of disabled-special needs students. Plaintiff made the decision to appropriately and professionally document, and informed Superintendent Johnson that she would need to document honestly and accurately.

13.   As the school year progressed, Plaintiff noticed a shift in her communications with the new Superintendent. In June, Superintendent Johnson expressed his opinion that Plaintiff was "overqualified" for her job and explained to her that Plaintiff would be relocated to a new office

away from her elementary office, tucked in the corner of the high school shop class so she could function "on a more district level." Plaintiff was puzzled by this decision because of the dynamics of the District as it related to nursing care. Plaintiff had serious concerns about the move related to safe patient care because the new office basically kept Plaintiff away from most students, especially those most needing care (elementary students). Plaintiff promptly expressed her concerns to the middle school administrator-principal and the Superintendent. At that point, Plaintiff was given the impression by both of them that the nurse relocation plan needed much more consideration and that the plan was to be tabled. However, in a meeting with the new Superintendent shortly thereafter, Superintendent Johnson urged Plaintiff to quickly and quietly relocate and "stay away" from the teachers, students and families on the elementary campus and allow the elementary campus secretary to make student related health decisions with no further questions asked or concerns expressed.

14. Plaintiff nevertheless continued to document and express her advocacy for the provision of services of special needs-disabled students, their families, and staff involved in their care. This specifically included explaining in writing that Plaintiff could not properly care for all students by staying in a neatly hidden office in the high school shop building. The more Plaintiff communicated about the care of disabled and students with special health needs, the more it was made clear to her that her professional opinions and advocacy were very unwelcome and that any continued efforts to that end would be hostilely received.

15. The raising of Plaintiff's concerns about standards of care for disabled-special needs students, or students who might be classified as such, and her reports of inadequate patient care have to date resulted in numerous acts of retaliation, including the following:

    (a)    Intimidation including a meeting between two administrators, a school attorney and Plaintiff, intended to explicitly marginalize Plaintiff:

Plaintiff was informed and directed that nursing care and related documentation of most students, especially disabled students, by herself as District Nurse was unimportant and unwelcome. Plaintiff was wrongly advised by PAISD counsel that Individualized Health Plans (IHP's) were not properly prepared by school nurses as part of the special education process. Counsel insisted wrongly that individual IHP's were the responsibility of the involved physician.

(b)     Administrators failing to respond to Plaintiff's emails and written communications addressing concerns, including concerns about special education student care issues as well as disabled and special education student care issues.

(c)     Excluding Plaintiff from important special education meetings and other staff meetings that concerned disabled-special needs students.

(d)     Working to reduce Plaintiff's contact with the special needs disabled student population, their parents, and their teachers.

(e)     Marginalizing Plaintiff as the School District Nurse, including strict directives that Plaintiff seek permission from unlicensed and paraprofessional staff to assess students and to only care for student/patients when directed to do so, after an unlicensed or paraprofessional staff member determined the need for care and then authorized Plaintiff to care for a student/patient.

(f)     Refusing a parent's express verbal request that Plaintiff be in attendance at the ARD (special education meeting) for her son to assist staff in understanding her child's health condition, treatment plan and related medication management. This was done in the presence of professional teacher who had also specifically requested Plaintiff's attendance at this ARD.

(g)     Deliberate editing of Plaintiff's nursing documentation about an emotionally disturbed student, specifically, the Superintendent erasing much of the document written by Plaintiff as a nurse, so that it addressed only the hearing and vision of the student.

(h)     Not responding to an email/refusing to allow another RN to substitute for Plaintiff after an unlicensed staff made contact with Plaintiff for support and stated she was not comfortable caring for a diabetic student in Plaintiff's authorized absence for nursing education.

(i)     The elementary principal sending a memo regarding healthcare from her desk to all parents and staff with no mention of the school nurse at all, advising parents to direct health-related questions and concerns to her [the principal], who has no medical training and no license.

(j) Marginalizing the Plaintiff and including a [new] strict directive requiring permission from unlicensed staff to secure parental informed consent to communicate/request physician guidance about a student/patient's condition or symptoms with a health care provider. This directive was sustained by PAISD administration after Plaintiff promptly and clearly communicated: 1.) concern about the directive related to delay in care risk associated with need for immediate medical guidance; 2.) risk associated with unlicensed staff underestimating the severity of an illness or injury secondary to knowledge deficit about certain medical conditions including diabetes.

(k) Although Plaintiff has a job description which specifies that she will serve the Port Aransas Independent School District's District Nurse (covering all campuses), the elementary school students have been stripped away from her practice and given admistratively, in most circumstances, to a new hire without any experience as a public school nurse. This means that Plaintiff has been demoted and the majority of disabled students will not routinely have the professional services of an experienced public school nurse. Further, Plaintiff has lost the majority of her patient contact.

(l) Spring contract renewals for next school year have already been widely approved for PAISD professionals, and the renewals have been published in the newspaper. Plaintiff's contract has not been renewed. Nor has Plaintiff been given notice of a proposed non-renewal.

16. The attitude of the highest level of the PAISD Management toward the issue of not documenting matters involving students which might lead to IDEA benefits, was well expressed by the Superintendent Wayne Johnson on November 11, 2015, while he was speaking to Plaintiff and a group of teachers with the PAISD attorney present. Superintendent Johnson, in pertinent part, said the following:

> "I'm going to be honest about it. There is only so much a superintendent can do or a principal can do so it's where the rubber meets the road. It's in that classroom so we need to figure out how to help that. I'm gonna tell you point blank and I believe this in my heart and soul {pause} *that the least way to help a kid is the paper* because you limit what you can do to help children {pause} and we have enough resources in our district that if we work as a team collectively we can do alot more for kids than on paper {pause}. *Once we start papering a kid the legalities of what we have to deal with the rules change* so I think it's important for all of us to understand where our lanes are. Fair enough? And we're doing a great job [teacher GB interrupts: I didn't understand what you said? papering them?] *Papering is when you start referring them and you start putting them in special education. You get them admitted.* You want these special programs and

you know uh sometimes that's good but you know we are not in a position to create an ED unit {pause} ya know when we look at the staff we have here and the financial means in this district *if you create that ED unit or that other help then you are going to take away from someone else* so I think we have to work collectively together to try to solve that we need to work together as a team and I think that's what I want to talk about today." (Emphasis added.)

17. The purpose and effect of the meeting described in paragraph No. 16 above was to chill and prevent the production of honest and accurate documents by PAISD teachers (as well as Plaintiff) if such honest and accurate records might lead to benefits for a disabled student under the IDEA law and therefore "take away" from someone else.

## VI. LEGAL CLAIMS

### COUNT ONE (RETALIATION UNDER THE REHABILITATION ACT)

18. Plaintiff realleges each and every allegation set forth in the preceding paragraphs and incorporates the same by reference.

19. Plaintiff Ramsden engaged in protected conduct under the Rehabilitation Act, by, among other things, repeatedly attempting to protect the rights of disabled patients or patients who might be classified as such, and advocating for their rights, all as alleged in greater detail above.

20. Defendant retaliated against Plaintiff as alleged in detail above.

21. Plaintiff Ramsden has suffered damages due to Defendant's illegal actions.

### VII. COUNT TWO (VIOLATION OF THE TEXAS NURSE PRACTICE ACT)

22. Plaintiff realleges each and every allegation set forth in the preceding paragraphs and incorporates the same by reference.

23. Section 301.402(f) of the Texas Occupations Code (Nurse Practice Act) provides in pertinent part that a nurse may report to the nurse's employer (and others) any situation which the nurse has reasonable cause to believe exposes a patient to substantial risk of harm as a result of

failure to provide patient care that conforms to minimum standards of acceptable prevailing practice, or to statutory, regulatory or accreditation standards. Section 301.413 of the Texas Occupations Code (Nurse Practice Act) provides that a person may not suspend or terminate the employment or otherwise discipline or discriminate against a person who reports under section 301.402(f) without malice. As alleged above in detail, Defendant PAISD has violated those laws by numerous acts of retaliation against Plaintiff Melissa Ramsden, R.N.

24. As a result of PAISD's above-alleged violations of the Nurse Practice Act, Plaintiff has suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(a) That this Court grant a permanent injunction enjoining Defendant PAISD, its trustees, officers, successors, agents assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates in violation of the Rehabilitation Act or the Nurse Practice Act or which facilitates, condones or encourages such discrimination, including subjecting Plaintiff or any of its other employees to harassment and retaliatory treatment in violation of law;

(b) That Plaintiff be awarded compensatory damages in an amount to be determined at trial;

(c) That Plaintiff be awarded back pay with prejudgment interest, and front pay in an amount to be determined at trial;

(d) That Plaintiff be awarded compensation for past and future non-pecuniary losses stemming from Defendant's unlawful conduct, including, but not limited to,

    emotional distress, and loss of enjoyment of life, in an amount to be determined at trial;

(e)  That Plaintiff be awarded statutory damages under the Texas Nurse Practice Act;

(f)  That Plaintiff be awarded her reasonable attorneys' fees as allowed by law;

(g)  That Plaintiff be awarded her costs associated with this action;

(h)  That Plaintiff be awarded recoverable expenses; and

(i)  That Plaintiff be awarded such other and further relief as the Court may deem to be just and proper under the circumstances.

    Respectfully submitted,

    THE SCHULMAN LAW FIRM, P.C.

    */s/John E. Schulman*
    John E. Schulman
    SBN 17833500
    Southern District of Texas Bar No.: 6959
    jschulman@schulmanlaw.com
    6440 North Central Expressway, Suite 210
    Dallas, Texas 75206
    214-361-2580 telephone
    214-361-6580 facsimile

    **ATTORNEY IN CHARGE**

    \*\*\*\*

    Gay Gilson
    Law Office of Gay E. Gilson
    SBN 0078413
    Southern District of Texas Bar No.: 16385
    gegilson@gilsonlaw.com
    5525 S. Staples, Suite B3
    Corpus Christi, Texas 78411
    361-887-0552 telephone
    361-887-0554 facsimile

    **OF COUNSEL**